IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Varinder Singh, | : | |
| | : | Case No. 1:26-cv-123 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Acting Field Director of Detroit Field | : | |
| Office, United States Immigrations and | : | Order Granting Petition for Habeas |
| Customs Enforcement, *et al.*, | : | Relief and Denying as Moot Motion to |
| | : | Dismiss |
| Defendants. | : | |

This matter is before the Court on the Petition for Writ of Habeas Corpus ("Habeas Petition") filed by Petitioner Varinder Singh.  (Doc. 1.)  Singh, a citizen of India, challenges his detention at the Butler County, Ohio Jail in the custody of Respondents, including the United States Immigration and Customs Enforcement ("ICE").  He argues that he is being unlawfully held and denied a constitutionally adequate custody redetermination hearing—a bond hearing—in a misapplication of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).  As the Court has done in analogous cases, the Court again holds here that detainees like Singh, who entered the country years ago without an inspection, are entitled to a bond hearing under § 1226(a).[1]  For the reasons that follow, the Court holds that Singh's continued detention without a bond hearing violates the INA and his due process rights.  The Court will **GRANT** the Habeas Petition.

The Butler County Sheriff filed a Motion to Dismiss on February 6, 2026 arguing that he is not the immediate custodian of Singh.  (Doc. 6.)  The Court will **DENY AS MOOT** the

---

[1]  *See Ramirez Quintana v. Lynch*, 1:25-cv-919, 2026 WL 746359 (S.D. Ohio Mar. 17, 2026); *Valdez Lopez v. Raycraft*, 1:26-cv-68, CM/ECF Doc. 17 (S.D. Ohio Apr. 2, 2026).

1

Motion to Dismiss.

## I.      BACKGROUND

### A.      Factual History

Singh, a citizen of India who was born in 1999, entered the United States at or near San Luis, Arizona on June 8, 2022 without being admitted or paroled.  (Doc. 10-2 at PageID 131, 137.)  He is married to a United States citizen and has no criminal history.  (Doc. 1 at PageID 11; Doc. 1-6 at PageID 56, 58.)  He has worked as a truck driver in the United States.  (*Id.* at PageID 58.)

Singh was detained by the United States Border Patrol on June 8, 2022 in Yuma, Arizona.  (Doc. 10-1 at PageID 129–130.)  On September 3, 2022, the Department of Homeland Security ("DHS") issued him a Notice to Appear before an Immigration Judge of the United States Department of Justice ("DOJ") in New York, NY on February 1, 2023.  (Doc. 10-2 at PageID 131.)  On the Notice to Appear form, DHS checked the box stating that Singh was "an alien present in the United States who has not been admitted or paroled."  (*Id.*)  DHS did not check the two alternative boxes stating that he was "an arriving alien" or that he had been "admitted to the United States, but [was] removable for the reasons stated below."  (*Id.*)  DHS made the following allegations:

> 1. You are not a citizen or national of the United States;
>
> 2. You are a native of INDIA and a citizen of INDIA;
>
> 3. You arrived in the United States at or near SAN LUIS, AZ, on or about June 8, 2022;
>
> 4. You were not then admitted or paroled after inspection by an Immigration Officer.

(*Id.*)

DHS released Singh on his own recognizance at an unspecified date.  During these initial

2

removal proceedings, Singh conceded in a Written Pleading dated January 31, 2023 that he was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182, but he stated that he would apply for asylum, withholding of removal, and other relief.  (Doc. 10-3 at PageID 137.)  Almost three years later, Immigration Judge Sarjo Barrow denied Singh's application for asylum, withholding of removal, and deferral of removal in an Order dated October 20, 2025.  (Doc. 10-4 at PageID 142.)  Immigration Judge Barrow ordered him removed to India.  (*Id.* at PageID 144.)  Singh timely filed an appeal on November 1, 2025 with the Bureau of Immigration Appeals ("BIA"), and his appeal remains pending.  (Doc. 10-5 at PageID 146–148.)

On December 1, 2025, immigration officials took Singh into custody following a traffic stop, and he is being held at the Butler County Jail in the custody of ICE.  (Doc. 1 PageID 12.)  Singh filed a request for a custody redetermination hearing—a bond hearing—at an unspecified date.  Singh submitted evidence to the Immigration Judge to support that request including an Affidavit of Support by a United States permanent resident, his own federal Form 1040 income tax return from 2024 showing his tax payment, his marriage license to a United States citizen, and proof of employment as a truck driver.  (Doc. 1-6 at PageID 45–58.)

Immigration Judge Jennifer Riedthaler-Williams issued an Order on January 6, 2026 denying Singh a bond hearing on the grounds stating that the immigration court "does not have jurisdiction to redetermine bond in this case."  (Doc. 1-7 at PageID 59.)  The BIA had held on September 5, 2025 that that noncitizens who are present in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without eligibility for bond, during the duration of their removal proceedings.  *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220, 229 (BIA Sept. 5, 2025).  Immigration Judge Riedthaler-Williams also found that even if the immigration court had jurisdiction, she "would still deny bond as [Singh] is a flight risk" and

3

"no amount of bond could be set that would ensure [his] appearance at future hearings." (*Id.*) However, she did not explain the burden of proof she applied or the basis for him flight risk finding.  Singh also filed an appeal of this Order to the BIA on January 29, 2026, where it remains pending.  (Doc. 1-8 at PageID 61.)

**B.**      **Procedural Posture**

Singh filed his Habeas Petition on February 3, 2026 against Respondents Kevin Raycraft, the Acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office for ICE; Kristi Noem, the Secretary of DHS; Pamela Bondi, the United States Attorney General; the Department of Homeland Security, the Executive Office for Immigration Review, and the Butler County Sheriff Richard K. Jones, the Warden of the Butler County Jail.  (Doc. 1 at PageID 6.)  He alleges that Respondents have unlawfully detained him without an individualized bond hearing.  (*Id.* at PageID 1, 3, 14.)  He alleges that Respondents have wrongfully asserted that his detention is governed by 8 U.S.C. § 1225(b)(2)(A)—which requires mandatory detention—when, in fact, his detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary detention and an individualized bond hearing.  (*Id.* at PageID 2–3, 14.)  He contends that this Court should reject the BIA's erroneous determination in *Matter of Yujure Hurtado* that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)A) and are ineligible for bond hearings.  (*Id.* at PageID 13–14.)  Finally, he asserts that he is a member of Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, — F.Supp.3d—, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), and is entitled to a bond hearing under the declaratory judgment issued therein.  (*Id.* at PageID 3–4, 13.)

He asserts three claims for relief in the Habeas Petition: (1) violation of the INA,

(2) violation of the bond regulations implanted under the INA, and (3) violation of due process. (*Id.* at PageID 13–15.)

The Butler County Sheriff filed a Motion to Dismiss on February 6, 2026 arguing that he is not the immediate custodian of Singh, but that Singh is merely being detained by federal authorities at the Butler County Jail through a contract with ICE. (Doc. 6.) Singh did not file a brief in opposition to the Motion to Dismiss. The use of the term Respondents herein will refer only to the federal Respondents, and not to the Butler County Sheriff.

Respondents filed their Return of Writ to the Habeas Petition on February 25, 2026. (Doc. 10.) They assert that Singh is being properly detained under 8 U.S.C. § 1225(b)(2)(A) and that his due process rights are not being violated. (*Id.* at PageID 111–118, 124–126.) They also argue that Singh is not entitled to relief as a member of the Bond Eligible Class certified in *Maldonado Bautista*. (*Id.* at PageID 118–124). Finally, they assert that Singh needs to exhaust administrative remedies before seeking habeas relief. (*Id.* at PageID 126–128.)

Finally, Singh filed a Reply to the Return of Writ on March 19, 2026. (Doc. 13.)

## II.     LAW AND ANALYSIS

The Court first will address the threshold issue of whether administrative exhaustion is required. Then the Court will turn to the merits of the INA claims: whether Singh's detention is governed by 8 U.S.C. § 1225(b)(2)(A)—in which case detention is mandatory—or by 8 U.S.C. § 1226(a)—in which case Singh is eligible for a bond hearing. Finally, the Court will examine the merits of Singh's due process claim.

**A.      Exhaustion of Administrative Remedies**

Respondents contend that the Habeas Petition should be dismissed because Singh did not first exhaust his administrative remedies.  Singh's appeal to the BIA of the Immigration Judge's Order denying his request for a custody redetermination—a bond hearing—remains pending.  Singh responds that exhaustion is not mandatory and should be excused in this case.  He also contends that requiring exhaustion would be futile here because the BIA is still applying *Matter of Yajure Hurtado* to deny bond hearings.  For the reasons below, the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).  The decision to require exhaustion is within the discretion of the district court when it is not mandated by statute.  *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing *McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention."  *Salvador F.-G. v. Noem*, No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025).  Courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g.*, *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025).  Under that test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

6

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* These factors weigh against imposing prudential exhaustion here. Statutory interpretation issues are properly addressed by federal courts. Also, to the extent that Singh has raised a due process challenge to his continued detention without a bond hearing, exhaustion is not appropriate because the BIA cannot review such constitutional challenges. *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement. Requiring exhaustion in this case would very likely subject Singh to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve. *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship.") (citation omitted). Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here. By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Singh presents to this Court. Respondents do not contend that the BIA is likely to reverse course on its *Matter of Yajure Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion was not required for Singh to bring this action.

**B.     INA Claims**

The Court now turns to merits of the Habeas Petition. Singh alleges that his continued detention without a bond hearing violates the INA and its regulations. (Doc. 1 at PageID 13–14.) His continued detention without a bond hearing is unlawful if his detention is governed by 8

7

U.S.C. § 1226(a). Conversely, his detention is mandatory if it is governed by 8 U.S.C. § 1225(b)(2)(A). As explained below, the Court is persuaded by the "overwhelming majority of fellow jurists from well over half of the federal judicial districts in the country" who have found that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez v. Raycraft*, No. 1:26-cv-69, —— F.Supp.3d——2026 WL 456065, at *3 (S.D. Ohio Feb. 18, 2026).

The Court starts with the text of the two INA detention provisions. When faced with a question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning." *Ky. v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("statute(s) should be construed so that effect is given to all [their] provisions[.]") (citation omitted).

    **1.**    **8 U.S.C. § 1225(b)**

Section 1225(b)(2)(A) imposes mandatory detention of an "applicant for admission" who is "seeking admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

8

> **§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**
>
> * * *
>
> **(b) Inspection of applicants for admission**
>
> * * *
>
> **(2) Inspection of other aliens**
>
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  This statutory section defines an "applicant for admission" in § 1225(a)(1) as an alien "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ."  8 U.S.C. § 1225(a)(1).  Additionally, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13(A).  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)."  *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1111 (E.D. Cal. 2025) (citation omitted).  "Other than this limited exception (which is not implicated here), detention under § 1225(b)(2) is considered mandatory."  *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797 F.Supp.3d at 777.

> **2.      8 U.S.C. § 1226**

Section 1226(a), on the other hand, allows for discretionary detention, as shown by the use of the word "may":

> **§ 1226. Apprehension and detention of aliens**

9

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--

(1) may continue to detain the arrested alien; and

(2) may release the alien on--

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a) (emphasis added).[2]  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The Immigration Judge then "evaluates whether there is a risk of nonappearance or danger to the community." *Lopez-Campos*, 797 F.Supp.3d at 777.

**3.      Interpretation**

As of the writing of this decision, the Sixth Circuit has yet to decide whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances.[3]  District court opinions within the Sixth Circuit have diverged, but the vast majority are in favor of the Petitioner's position.  *See*, *e.g.*, *compare*, *e.g.*, *Ortiz Guiterrez*, 2026 WL 456065, at *3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents' detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y,*

---

[2]  Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes, but it does not apply here.  8 U.S.C. § 1226(c).

*Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).[4]

The Court concludes that the plain language of § 1226(a) more naturally aligns with Singh's detention, while the application of § 1225(b)(2)(A) to Singh's detention requires a strained statutory interpretation and is not persuasive. The present-tense language used in § 1225(b)(2)(A) does not match Singh's status because he was not "seeking admission" when he was detained by Respondents in December 2025. *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means. This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … —are not 'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies present-tense action) (cleaned up); *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098-TLP-atc, 2025 WL 3689158, at *6 (W.D. Tenn. Dec. 19, 2025) ("seeking" suggests action such that the noncitizen must actively be seeking admission and not simply residing in the country after entering unlawfully); *Del Villar v. Noem*, No. 4:25-cv-00137-GNS, 2025 WL 3231630, at *4–5 (W.D. Ky. Nov. 19, 2025) (finding that even if the petitioner might be an applicant for admission since

---

[3] The Court is mindful that the issue is before the Sixth Circuit in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.

[4] One unofficial tally of district court opinions can be found at Politico, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true, (last viewed 3/30/2026).

he did not lawfully enter the country after inspection and authorization by immigration officer, the petitioner was not "seeking" admission since he had been in the country for more than 25 years) (quoting *Lopez-Campos*, 797 F.Supp.3d at 782).[5]

Further, continuing to look at the plain language of the statute, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025). It does not appear that *any* of these findings were made here, since Singh was not inspected by an immigration officer. (Doc. 10-1 at PageID 130.) After Singh was taken into custody the first time, DHS issued a Notice to Appear and checked the box charging him with being "an alien *present* in the United States who has not been admitted or paroled." (*Id.* at PageID 131 (emphasis added).) DHS did not check the box for the alternative option of charging him with being "an arriving alien." (*Id.*) It is inconsistent and strains credulity for Respondents to suggest that the two potential charges are categorically the same when the Notice to Appear form treats them as alternative and distinct categories. *See Patel*, 2025 WL 2996787, at *5. As in *Patel*, the Government affirmatively treated Singh as

---

[5] As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

*Lopez Benitez*, 795 F.Supp.3d at 489.

12

being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that he is detained under § 1225(b)(2)(A). *See id*. at *5–6. In sum, under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statutes at issue—this Court finds that Singh's detention is governed by § 1226(a), not § 1225(b)(2)(A).

The Court's conclusion is buttressed by the Supreme Court's seminal opinion in *Jennings*, albeit in dicta. The Supreme Court in *Jennings* drew a clear distinction between noncitizens detained while seeking admission and noncitizens detained after already being in the country:

> . . . U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289 (emphasis added); *see also*, *e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'" ) (quoting *Jennings*, 583 U.S. at 288); *Sanchez Alvarez v. Noem*, 807 F.Supp.3d 777, 787 (W.D. Mich. 2025) ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287), *on appeal* No. 25-1969 (6th Cir.); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall…. § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'") (quoting *Jennings*, 583 U.S. at 288, 301), *on appeal*, No. 25-1982 (6th Cir.). *Jennings* supports the conclusion that

13

Singh, who entered the United States in 2022 and was residing in Indiana, is being detained under § 1226(a).

### 4. *Maldonado Baustista v. Santacruz*

Singh additionally argues that he is entitled to a bond hearing as a member of the Bond Eligible Class certified in *Maldonado Bautista*, 5:25-cv-01873-SSS-BFM, —F.Supp.3d—, 2026 WL 468284, at *10 (C.D. Cal. Feb. 18, 2026).  Respondents, on the other hand, contend that *Maldonado Bautista* has no preclusive effect outside of the Central District of California.

The district court in *Maldonado Bautista* most recently purported to vacate *Matter of Yajure Hurtado*, the BIA decision upon which Immigration Judges are relying to hold that noncitizens like Singh are detained under 8 U.S.C. § 1225(b)(2)(A) and not entitled to bond hearings.  2026 WL 468284, at *10.  The Government has appealed.  The Ninth Circuit has temporarily stayed enforcement of the judgment in favor of the Bond Eligible Class outside of the Central District of California and the decision vacating *Matter of Yajure Hurtado*. *Maldonado Bautista v. United States DHS*, No. 26-1044, Dkt 5, Order (9th Cir. Mar. 6, 2026).

Regardless of the stay, however, because the Court finds that Singh's other arguments are meritorious, the Court need not and does not decide whether or to what extent *Maldonado Bautista* would be binding here.

### 5. Conclusion for INA Claims

The Court holds that Respondents' refusal to provide Singh with a bond hearing violates the INA, 8 U.S.C. § 1226(a).  *See Jennings*, 583 U.S. at 306 (finding that regulations provide right to bond hearing for detentions under § 1226(a)); *Lopez-Campos*, 797 F.Supp.3d at 777 (same).

14

**C.     Due Process**

Singh also alleges that the failure to provide him with a bond hearing violates his due process rights.  (Doc. 1 at PageID 13–14.)  Respondents' primary defense is that due process does not require a bond hearing for a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(2)(A).  It argues that under Supreme Court precedent a noncitizen seeking initial entry into the country has "only those [due process] rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020).  That defense fails at the onset because the Court has held that Singh's detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by § 1225(b)(2)(A).  This Court's holding is consistent with *Thuraissigiam* insofar as the Supreme Court also noted that noncitizens "who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107.

This Court is persuaded that detaining Singh under § 1225(b)(2)(A) deprived him—and continues to deprive him—of due process rights under the Fifth Amendment.  "Non-punitive detention in the immigration context violates the Due Process Clause, absent adequate procedural protections or a special justification outweighing a petitioner's liberty interest." *Ortiz Gutierrez*, 2026 WL 456065, at *4 (cleaned up).  As such, "detention [under § 1226(a)] is discretionary and constitutionally constrained by due process." *Id*. (citation omitted).  The Court finds that Respondents violated Singh's due process rights by enforcing mandatory detention under § 1225(b)(2).  The Court thus turns to the matter of what process is due to Singh.

Courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of the process in the context of civil immigration detention.  *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali v. Raycraft*, No.

1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026).  *Mathews* instructs the Court to consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.  424 U.S. at 335.  Two of the three factors favor Singh.

The first *Matthews* factor, the private interest that will be affected by the official action, strongly favors Singh.  As noted above, at the heart of the Fifth Amendment is the right to be free from deprivation of liberty, and his liberty is at stake.  Singh has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According to the Habeas Petition, Singh is married to an American citizen, and he has no criminal history.  He appears to work as a truck driver, and he has paid income taxes.  He has a pending appeal before the BIA on his application for asylum.  Singh's detention without a bond hearing impinges on his liberty.

The second factor also favors Singh.  An individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Singh poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of his right not to be deprived of liberty without due process.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 785.  Finally, the last factor is neutral and does not favor either side.  The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Singh is necessary to further the Government's interest.  Nor has the Government showed that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.  In fact, the Government provided bond hearings to detained noncitizens like Singh for

16

almost thirty years before DHS issued an Interim Guidance Regarding Detention Authority for Applicants for Admission on July 8, 2025 changing its detention policy.  *See* https://perma.cc/5GKM-JYGX.

In sum, two of the three *Mathews* factors favor Singh and compel this Court to hold that his continued detention under § 1225(b)(2)(A) violates his Fifth Amendment right to due process.  *See Urrutia-Diaz*, 2025 WL 3689158, at *7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar*, 2025 WL 3231630, at *6–7 (all three factors favor the petitioner); *Barco Mercado*, 2025 WL 3295903, at *11–12 (addressing due process claim); *see also Lopez Benitez*, 795 F.Supp.3d at 491–496 (discussing due process and *Mathews*); *Lopez-Campos*, 797 F.Supp.3d at 784–785 (applying *Mathews*); *Chavez v. Dir. of Detroit Field Office*, No. 4:25-cv-2061, 2025 WL 3187080, at *8 (N.D. Ohio Nov. 14, 2025) (summary conclusion of due process violation and collecting cases).

The Court holds that imposing mandatory detention upon Singh under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing violates Singh's due process rights.

## D.      Attorney Fees and Costs

Singh seeks attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (Doc. 1 at PageID 15.)  Section 2412(b) of the EAJA permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(b).  The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules.

## III.     CONCLUSION

For the reasons stated above, the Court **FINDS** that Singh is not subject to mandatory

detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining him without a bond hearing violates his statutory rights and due process rights under the Fifth Amendment.  The Court **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Singh with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Singh from custody.  If Respondents choose to provide a bond hearing in lieu of releasing Singh from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.  *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No. 1:25-CV-1704, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21, 2026); *Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to detention can reasonably address the Government's interest, as well as Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

18

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due process compliant, bond redetermination hearing was held or whether and when Singh was released from custody.

Finally, the Butler County Sheriff's Motion to Dismiss (Doc. 6) is **DENIED AS MOOT.**

**IT IS SO ORDERED**.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court